# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GRACE GERNHART and : | |
| RONALD GERNHART, JR., : | |
| Plaintiffs, : | |
| : | |
| v. : | CIVIL ACTION NO. 18-2296 |
| : | |
| SPECIALIZED LOAN SERVICING LLC, : | |
| *also known as SLS MORTGAGE*, : | |
| Defendant. : | |

**MCHUGH, J.**                                                                                             **MARCH 18, 2019**

## MEMORANDUM

This action centers on allegations that Defendant, a loan servicer, failed to properly credit payments and otherwise manage a mortgage, resulting in an ongoing threat of foreclosure for Plaintiffs. Defendant now moves to dismiss Plaintiffs' Amended Complaint, which alleges fraud, violations of the Real Estate Settlement and Procedures Act (RESPA), the Fair Debt Collection Practices Act (FDCPA), and the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), as well as a claim for negligence.

Plaintiffs' initial Complaint brought the same claims with the exception of the negligence claim. This Court dismissed the first Complaint without prejudice but with clear direction that an Amended Complaint would require Plaintiffs to plead with greater factual specificity and to address arguments from Defendant regarding several of their claims. Plaintiffs have failed to heed this direction with regard to Counts I, II, III, and IV, and in Count V, have separately failed to state a claim for negligence. Accordingly, I grant Defendant's Motion to Dismiss Plaintiffs' Amended Complaint in its entirety, this time with prejudice.

1

I. **FACTUAL RECORD**

From either July 7, 2014 or March 25, 2015[1] to the present, Specialized Loan Servicing LLC has "claim[ed] to be the owner and/or servicer" of a note executed by Plaintiffs Grace and Ronald Gernhart and secured by a mortgage on their home. Pls.' Am. Compl. ¶ 2(A). As servicer of the mortgage, Defendant promised to undertake the activities generally necessary to manage it: accurately apply payments to the mortgage and escrow accounts; disburse escrow amounts where appropriate; provide periodic statements to Plaintiffs with billing information, account balances, and contact information; and promptly resolve disputes or errors. Plaintiffs represent that they have always made payments on time and in the proper amount, including sums for the reimbursement of taxes, insurance payments, and other costs.

Plaintiffs allege that Defendant "negligently, carelessly and improperly credit[ed] or otherwise mishandled the payments made by the Plaintiffs, by routinely placing them into a suspense or escrow account, and thereafter refunded the same back to the Plaintiffs, thereby creating an incorrect perception of delinquency." *Id.* at ¶ (2)(F). Defendant also purportedly failed to issue periodic billing statements, improperly paid property taxes on the Plaintiffs' home, and improperly charged late fees, interest and other penalties.

Plaintiffs further allege that beginning on October 15, 2015 and monthly thereafter, because of the improper crediting of payments, and despite continuing to accept monthly payments from Plaintiffs, Defendant wrongfully asserted that Plaintiffs defaulted on their mortgage and sent "Act 6 / Act 91 Notices . . . which threatened foreclosure." *Id.* at ¶ 2(H). To

---

[1] Plaintiff's Amended Complaint alleges conflicting dates for when Defendant notified Plaintiffs that it was the servicer of their mortgage. In a section of the Amended Complaint entitled "Background Material Facts" Plaintiffs allege "[o]n or about July 7, 2014 and for a substantial period of time prior thereto, up to present, the Defendant was claiming to be the owner and/or servicer of a Note alleged to have been executed by the Plaintiffs and secured by a Mortgage on the Property." Pls.' Am. Compl. ¶ (2)(A). However, in count IV, alleging a violation of the UTPCPL, Plaintiffs state "[a]s early as March 25, 2015 and monthly thereafter to present, the Defendant would inform the Plaintiffs that it was the servicer of Plaintiffs' Mortgage." *Id.* at Count IV ¶ (2).

date, Plaintiffs allege Defendant has not made any effort to establish in-person contact with Plaintiffs or inform them about any loss mitigation options.

Plaintiffs have attempted to rectify the situation via "[r]epeated inquiries and communications" as recently as August 6, 2018, as well as "numerous . . . requests for information." *Id.* at ¶ 2(I), (K). The only action Defendant has taken in response is to make "promises of correction and adjustments" that have gone unfulfilled, accompanied by "contradictory and blatantly untrue explanations." *Id.* at ¶ (2)(I), (L). Plaintiffs allege, as a result of Defendant's actions, that they have suffered severe and permanent financial, physical, and emotional damages and losses.

## II. DISCUSSION

### A. Standard of Review

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009), provides the standard for my consideration of Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

### B. Plaintiffs Have Not Pled Specific Facts for A Fraud or UTPCPL Claim

In Count I, Plaintiffs reassert a claim for common law fraud. As I noted in a recent case alleging claims for fraud and violations of the UTPCPL, *Vullings v. Bryant Heating and Cooling Sys., Carrier Corp.*, 2019 WL 687881, at *5 (E.D. Pa. February 19, 2019), courts should be hesitant to dismiss claims for lack of specificity, but Rule 9(b) expressly demands that, in cases concerning fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Third Circuit has explained that this heightened standard requires plaintiffs to plead "all of the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the

events at issue." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997)). This specific pleading is necessary to put "the defendant on notice of the precise misconduct with which it is charged and . . . inject precision or some measure of substantiation into a fraud allegation." *Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018) (internal quotation marks omitted) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

A fraud claim has the following elements: (1) a representation, (2) that is material to the transaction at issue, (3) that was made falsely with the knowledge of falsity or recklessness as to whether it was true or false, (4) with the intent of misleading another into relying upon the representation, (5) justifiable reliance on the representation, and (6) resulting injury. *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999). In a previous order, this Court found Plaintiffs' fraud claim failed to meet Rule 9(b) pleading requirements because it did not allege when the fraud took place, when payments were due, or the nature of any correspondence Plaintiffs had with the Defendant.

The Amended Complaint has failed to rectify these deficiencies. The entirety of Plaintiffs' fraud and UTPCPL claims, to the extent they are based on fraud, rest on the following facts: beginning on or about October 15, 2015, agents of Defendant contacted Plaintiffs on a monthly basis with allegations of a delinquency and, conversely, with un-kept promises to correct and adjust the alleged servicing errors. Plaintiffs fail to plead with any specificity who made the promises, what the promises consisted of, when any particular promise was made, or how the promises were made. Moreover, the Amended Complaint does not plead sufficient facts for justifiable reliance. It is unclear how Plaintiffs could have been justified in relying on a promise that, by their own version of the facts, was broken on a monthly basis. Because this

Court already dismissed Plaintiffs' fraud claim for a lack of specific facts and the Amended Complaint has likewise failed to inject any precision, Plaintiffs' fraud claim is dismissed with prejudice.

For similar reasons, Count IV fails to state a UTPCPL claim based on deception. Plaintiffs' UTPCPL claim in their first Complaint was dismissed because it failed to plead justifiable reliance on a misrepresentation made by the Defendant that led to an ascertainable loss.  As I noted in *Joussett v. Bank of Am., N.A.*, 2016 WL 5848845, at *7 (E.D. Pa. Oct. 6, 2016), a deception claim is not subject to the same Rule 9(b) particularity standard as a fraud-based UTPCPL claim.  However, to make out a deception claim, "a plaintiff must show (1) 'a deceptive act, that is conduct that is likely to deceive a consumer acting reasonable under similar circumstances'; (2) 'justifiable reliance, in other words that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the defendants' misrepresentation or deceptive conduct'; and (3) 'that this justifiable reliance caused ascertainable loss.'" *Id*. (quoting *Vassalotti v. Wells Fargo Bank*, N.A., 732 F. Supp. 2d 503, 510-11 (E.D. Pa. 2010)).  Similar to *Joussett*, Plaintiffs' UTPCPL claim fails because they have not alleged any specific act of deception but rather assert in general terms that Defendant misrepresented and deceived them into believing accounting errors would be corrected.  As in their first Complaint, Plaintiffs have not alleged specific facts regarding particular acts or conduct.  Therefore, their UTPCPL claim is now dismissed with prejudice.

### C.  Plaintiffs Do Not Have a Private Right of Action Under RESPA

In Count II of the Amended Complaint, Plaintiffs again allege violations of RESPA but do so under a regulation that does not provide a private right of action.  Plaintiffs allege Defendant violated Section 1024.39 of Regulation X, RESPA's primary implementing

regulation. 12 C.F.R. § 1024.39. Plaintiffs cite *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003 (11th Cir. 2016) to argue that Section 1024.39 provides a private right of action. *Lage* specifically found that Sections 1024.41 and 1024.35 of Regulation X provide a private right of action. *Id.* at 1007. For Section 1024.41, *Lage* based its conclusion on the explicit language of the section itself. *Id. Lage* found Section 1024.35, on the other hand, implicated Section 2605(e)(2) and (f) of RESPA, which makes servicers liable to a borrower if they fail to respond to written notices of account errors. *Id.*; 12 U.S.C. § 2605(e)(2). *Lage* did not, however, address whether Section 1024.39 provides a right of action for borrowers.

Plaintiffs have not argued a claim under Sections 1024.41 or 1024.35, nor have they pled sufficient facts for one: no averments were made to the form or substance of their "repeated inquiries and communications." Plaintiffs' sole RESPA claim is made under Section 1024.39, which does not contain any language suggesting the existence of a private right of action for a violation. *See* 12 C.F.R. § 1024.39. Plaintiffs cite no other authority recognizing such a right under Section 1024.39 and I can find none.[2]

Further, even if Plaintiffs had alleged a violation for which there is a private right of action under RESPA, they have failed sufficiently to allege damages as required under Section 2605 of the Act. 12 U.S.C. § 2605(f)(1). To make a claim under RESPA, borrowers must allege actual damages or establish a pattern or practice of noncompliance with the requirements of RESPA. *Id.* Plaintiffs have not pled any actual damages they suffered as a result of the alleged RESPA violation. Nor does it appear that they could, as the complaint only alleges damages generally from the *threat* of foreclosure. Dismissal is therefore warranted.

---

[2] It is perplexing that Plaintiffs did not avail themselves of Section 1024.35, which provides procedures by which borrowers can submit written requests for the investigation of account errors.

### D. Defendant Is Not A "Debt Collector" Under the FDCPA

An essential element of an FDCPA claim is whether a defendant is a "debt collector" as defined by the Act. *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015). The Act defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a (6). "Creditors" are generally not considered debt collectors under the Act. *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000), abrogated on other grounds by *Henson v. Santander Consumer USA Inc.*, 137 S.Ct. 1718, 1721 (2017). The Supreme Court's partial abrogation of *Pollice* clarified an exemption to this general rule: a creditor may qualify as a "debt collector" only if it collects debts for another, rather than for its own account. *Henson*, 137 S.Ct. at 1721.

Plaintiffs allege that Defendant is a servicer who collects periodic scheduled payments and therefore acts as a debt collector. But, this is a conclusory accusation and Plaintiffs' briefing lacks any cogent argument why Defendant would qualify as a debt collector under the Act. Plaintiffs cite *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012), but *Bridge* involved a creditor that acquired a debt from another and then sought to collect it. Plaintiffs here have made no allegation that the Defendant acquired their mortgage from another servicer or creditor.

Plaintiffs again cite *Vincent v. The Money Store*, 736 F.3d 88 (2d Cir. 2013) and *Kaymark v. Bank of Am. N.A.*, 783 F.3d 168 (3d Cir. 2015), but I have already concluded they have no bearing on Plaintiffs' claim.

Plaintiffs have not made any new allegations in their Amended Complaint sufficient to support a finding that Defendant is a "debt collector" under the Act. As a result, their FDCPA claim is dismissed with prejudice.

### E. The Economic Loss Doctrine Bars Plaintiffs' Negligence Claim

Plaintiffs now also allege that Defendant is liable for failing to properly service the loan. To state a claim for negligence, a plaintiff must allege facts sufficient to show: (1) a duty requiring the defendant to conform to a certain standard of conduct; (2) a failure to conform to that standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage to the plaintiff. *Brewington for Brewington v. City of Phila.*, 199 A.3d 348, 355 (Pa. 2018); *see also Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005). Defendant seeks to dismiss based on the economic loss doctrine. The economic loss doctrine does not preclude all negligence claims seeking solely economic damages, *Dittman v. UPMC*, 196 A.3d 1036, 1054 (Pa. 2018), but continues to preclude actions where the duty arises under a contract between the parties. Only where the duty arises independently of any contractual duties between the parties may a breach of that duty support a tort action. *Id.*

Plaintiffs argue that Defendant owed them a duty to properly manage and service their mortgage, breached this duty by failing to properly credit payments and to issue periodic billing statements, and this breach led to the wrongful categorization of Plaintiffs' mortgage as being in default. Plaintiffs further allege that as a result of the threat and pursuit of foreclosure, they suffered "severe financial, physical and emotional damage and loss." Pls.' Am. Compl. Count V ¶ 21.

Plaintiffs argue that they do not have a contractual relationship with the Defendant, because it "is only the servicer of the Plaintiffs' mortgage/note – not a party to it." Pls.' Resp. 14

(ECF No. 13). However, Plaintiffs allege in the Amended Complaint that "the Defendant was claiming to be the *owner* and/or servicer of a Note alleged to have been executed by the Plaintiffs and secured by a Mortgage on the Property." Pls.' Am. Compl. ¶ (2)(A) (emphasis added). The complaint also alleges that the Defendant "*promised* and *committed* itself to performing all acts necessary to . . . manage the Mortgage." *Id.* at ¶ (2)(B) (emphasis added). Moreover, the gravamen of Plaintiffs' Amended Complaint is that the Defendant breached various duties owed to the Plaintiffs pursuant to the Note and the Mortgage. In short, Plaintiffs do not identify the source of any duty Defendant would have to Plaintiffs other than one arising out of some form of contract. Therefore, Plaintiffs have failed adequately to address the bar presented by the economic loss doctrine.

Even if Plaintiffs' claim were not barred by the economic loss doctrine, Plaintiffs have failed to plead facts sufficient to show actual loss. Plaintiffs allege their damages flow from Defendant's wrongful *allegation* of default and *pursuit* of foreclosure. Plaintiffs do not allege how an allegation or threat of foreclosure caused an actual loss. They make no allegations about the nature of their financial, physical, or emotional damages.[3] Even when taking all inferences in favor of the Plaintiff, these allegations are insufficient to show that Plaintiffs suffered any kind of actual loss. I am unconvinced that any amendment would cure the defects in Plaintiffs' negligence claim and, therefore, dismiss it with prejudice.

---

[3] To the extent that Plaintiffs would seek to argue that they have alleged non-economic damages in the form of emotional loss, they have not asserted a separate claim for emotional distress, nor would there be a colorable basis for doing so. Under Pennsylvania law, where such claims are not based on the occurrence of a physical injury, the scope of liability is exceedingly narrow. *Toney v. Chester Cty. Hosp.*, 961 A.2d 192, 200 (Pa. Super. 2008), *aff'd*, 36 A.3d 83 (Pa. 2011).

## III. CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss is granted. An appropriate order follows.

                                                   /s/ Gerald Austin McHugh
                                               United States District Judge